State v. F. G. Andrew.

---

## THE STATE v. F. G. ANDREW, Appellant.

Division Two, February 23, 1923.

1. **FORGERY:** Information: Contract Affecting Property Rights. Section 3436, Revised Statutes 1919, is the statute applicable to the crime of falsely making and forging a contract whereby the property rights of another are purported to be transferred or affected; and it makes such crime forgery in the third degree.

2. ———: ———: ———: Instruction for Second Degree: Prejudicial Error. Where the crime charged is forgery in the third degree, it is error to submit the case to the jury as forgery in the second degree. Forgery in the second degree and forgery in the third degree are separate and distinct offenses, and the maximum punishment for the one exceeds that of the other by three years' imprisonment; and where the information charged forgery in the third degree, and the given instruction for forgery in the second degree very likely had something to do with the punishment assessed by the jury, the giving of such instruction was prejudicial error. [Distinguishing State v. Bird, 286 Mo. 593.]

3. ———: ———: Variance. The information should charge the facts which the State's proof tends to establish. Where the information charges that the signatures of defendant and two others to the contract were forged, and the State's evidence tends to prove that the signature of defendant was genuine, and the genuineness of the signature of one of the others is admitted, and it is only the genuineness of the signature of the third that is in issue, there is a variance between the allegation and proof.

State v. F. G. Andrew.

4. ———: ———: Fictitious Name. Where the name of William C. Smith was signed to the contract, and the evidence tends to show that such signature was a forgery, and all the circumstances show that the signature was intended for William H. Smith or it was a fictitious signature, the information should properly charge the fact.

5. ———: Third Degree: Demurrer: Sufficient Evidence. Where defendant did not stand upon his demurrer to the State's evidence, but after it was overruled introduced evidence in his own behalf, the sufficiency of the evidence to support a verdict of guilty must be determined from all the evidence. And in this case it is held that the whole evidence, which is set out in detail, was sufficient to support a verdict of guilty of forgery in the third degree; and notwithstanding errors in admitting evidence and in the instruction given and a defective information, the cause is remanded in order that an appropriate information may be filed, if the State so elects, and the case be again submitted to a jury, under proper instruction and competent evidence.

Appeal from Jackson Circuit Court.—*Hon. Ralph S. Latshaw*, Judge.

Reversed and remanded.

*Floyd E. Jacobs* and *M. J. Henderson* for appellant.

(1) The defendant was convicted under the second county of the information, which charged that he did, with intent to injure and defraud, deliver the said falsely made, forged and counterfeited instrument to Agnes Crampton for the sum of five hundred dollars with the felonious intent to have the same uttered and passed. Following the reading of this information, there seems to be no question that Section 3439 covers the case; that is to say, that the information is based on said section, which is forgery in the fourth degree. The substance of this statute is almost identical with the charging part of the second count of the information, and of course, if this is forgery in the fourth degree, then the punishment for forgery in the fourth degree is imprisonment in the penitentiary not to exceed five years or in the county jail not less than six months, and the instruction given by the court, that if they found the defendant

guilty they should fix his punishment at not less than two years or more than ten years in the penitentiary, would be erroneous. State v. Barnett, 203 Mo. 640; State v. Milligan, 170 Mo. 215. Sections 3428 and 3429 apply to instruments purporting to be executed by banks. State v. Gibson, 244 Mo. 215. (2) This charge is a specific charge of forgery. If the defendant forged the instrument or if he forged the signatures, he was guilty of some crime under some statute, and it was unnecessary and improper to prove other transactions of a different kind and a different nature, as they would only tend to prejudice the jury against the defendant.

The answers of the witness plainly disclose how immaterial and incompetent the testimony is and what an effect it would have on the minds of the jury. (3) "There is no necessity of proving the intent with which the act was done in the case before us. If the defendant committed the acts charged, those acts carried their own proof of intent and proof of other crimes of a silimar nature is not admissible." State v. Austin, 234 S. W. 802; State v. Spray, 174 Mo. 569; State v. Monroe, 273 Mo. 341; State v. Burlingame, 146 Mo. 226. (4) The court committed error in permitting the State to prove at one time according to the State's testimony that the defendant went under an assumed name. (5) The court permitted improper and incompetent testimony with reference to where the prosecuting witness got her money that she claimed she deposited with the defendant. (6) The court permitted the State to introduce incompetent, irrelevant and immaterial testimony in showing that the defendant at different times would get soap, shaving cream, razor blades and other paraphernalia of every description out of the drug store, thrown into the suit for the sole purpose of so inflaming the minds of the jury against the defendant that he could not have a fair and impartial trial.

*Jesse W. Barrett,* Attorney-General, and *Henry Davis,* Assistant Attorney-General, for respondent.

(1)   The information fully charges the offense of uttering a forged instrument, and sufficiently apprised the defendant of the nature and character of the charge he was required to meet.   Sec. 3441, R. S. 1919; State v. Watson, 65 Mo. 115; State v. Mills, 146 Mo. 195; State v. Homer, 48 Mo. 520; State v. Harroun, 199 Mo. 519. (a)   It is not necessary to allege that any particular person was defrauded of any money or other valuable thing in a charge for uttering a forged instrument. State v. Phillips, 78 Mo. 49; Sec. 3441, R. S. 1919.   (b)   Neither is it necessary under said-section to plead that the forged name is that of a natural or a fictitious person. State v. Stegner, 207 S. W. 826.   (2)   Appellant offered a demurrer to the evidence at the conclusion of the State's evidence.   It was overruled and he then offered evidence in his own behalf.   The demurrer was not again offered at the conclusion of the whole of the evidence and he cannot now complain of its overruling. State v. Lackey, 230 Mo. 707.   (3)   Where a person is charged by an information with having forged his own and another person's name to an instrument purporting to create a pecuniary obligation or demand, and the evidence shows that the defendant signed his own name to the instrument and that the other person also signed it, the evidence fails to sustain the charge, and a verdict rendered on such information and evidence is erroneous. State v. Cordray, 200 Mo. 33.   (4)   Evidence of other transactions aside from the one out of which the charge grew, was incompetent, but as they did not tend to prove another crime the error is harmless.

DAVID E. BLAIR, J.—Defendant has appealed from a conviction of the crime of uttering and passing a forged contract, wherein his punishment was assessed by the jury in the Criminal Court of Jackson County at imprisonment in the state penitentiary for four years.

The second amended information, upon which defendant was tried, was drawn in two counts.   The first count charged the forgery of the instrument alleged in

the second count to have been uttered by defendant. The trial court submitted the case upon the second count; hence the first count need not be further noticed. It is necessary to set out the second count of the information in full. It reads as follows:

"And said Cameron L. Orr, Prosecuting Attorney, as aforesaid, upon his oath aforesaid, further states that F. G. Andrew on the 29th day of October, 1920, unlawfully and feloniously had in his custody and possession a certain false, forged and counterfeited instrument in writing, purporting to be made by Wm. C. Smith, F. G. Andrew and Agnes Crampton by which a pecuniary demand and obligation for the payment of five hundred dollars ($500) by the said F. G. Andrew and Agnes Crampton to the said Wm. C. Smith purported to be created which said false, forged and counterfeited instrument in writing is of the tenor following, that is to say:

" 'CONTRACT.

" 'This contract made this 29th day of October, 1920, by and between W. C. Smith of Holt, Missouri, party of the first part, and F. G. Andrew and A. Crampton, of Kansas City, Missouri, parties of the second part, to-wit:

" 'That for and in consideration' of the drilling of four wells on leases located in the County of Clay, State of Missouri, lying west and south of Holt, Missouri, on Burlington Railroad, said parties of the second part are to have and retain a two-thirds (2/3) part of 1000 acres lying in and directly west and south of Holt, Missouri.

" 'It is further agreed that on all other leases taken by party of the first part which shall equal 20,000 acres and as much more as will be possible to obtain, all lying south and west of Holt, Missouri, on structure outlined by parties of the second part, that parties of the second part shall have and retain one-half (1/2) of said acreage.

" 'It is further agreed that parties of the second part shall supervise the drilling of said wells and the

making of locations for same. Also that parties of the second part shall place in Bank of Holt, Missouri, at least five hundred ‵($500) dollars to show good faith in this contract. Said money to be used for drilling of said wells. Leases to the above mentioned acreage shall be placed in said bank and are now in said bank and shall remain there until the drilling of wells begin, at which time a division of same shall be made.

    " '(Signed) Agnes Crampton.

           " ' (Signed) Wm. C. Smith,

           " ' (Signed) F. G. Andrew.'

"and that the said F. G. Andrew did afterwards, to-wit, on the day and year aforesaid at the county aforesaid, unlawfully and feloniously with intent to injure and defraud deliver the said falsely made forged and counterfeited instrument aforesaid, to one Agnes Crampton for the consideration and sum of five hundred ($500) dollars with the felonious intent to have the same uttered and passed, he, the said F. G. Andrew then and there well knowing the said aforesaid instrument in writing to be falsely made, forged and counterfeited as aforesaid, against the peace and dignity of the State."

The jury returned the following verdict:

"We, the jury, find the defendant F. G. Andrew, guilty of uttering and passing forged contract as charged in the second count in the information and assess his punishment at 4 years in the State Penitentiary."

The testimony tended to show the following facts: The prosecuting witness, Agnes Crampton, was a negress who was engaged in running a drug store at 1416 East Twelfth Street in Kansas City. During the year 1920, defendant represented to her that he was interested in some oil leases in Holt, Missouri. It seems that she had previously invested some money in Texas oil leases held by defendant. Defendant told her if she would invest in the Holt enterprise she would make some money. She testified that he said: "I have some leases up here and I will make you a partner in with me; you and myself and a man named Smith, and I will sign

over to you a portion of this; you put in some money and you will make some money." Defendant told the prosecuting witness that Smith was a millionaire banker in Holt. She told defendant that she had about $500. Defendant told her he was going to Holt to get Smith to sign the contract and when he returned he showed her the executed contract and stated that Smith had signed it. She thereupon also signed it. No contention is made by the State that any signature to the contract was forged, except that of William C. Smith. After the delivery of the contract by the defendant, Agnes Crampton put up money from time to time, and she claimed the total amounted to about $2700.

Defendant denied he gave Agnes Crampton the contract identified by her and set out in the information. He claimed he had a contract for a two-thirds interest in one thousand acres of oil leases near Holt, Missouri, held by Smith and S. R. Andrew, and a one-half interest in other acreage Smith and Andrew might procure up to 20,000 acres, and that he made an agreement with one Mrs. Klinger to give her one-half of his own interest if she would furnish money for drilling the leases, and that as a side contract he agreed to give Agnes Crampton one-half of his remaining one-half and one-third interests, respectively, for getting Mrs. Klinger to put up the money. He claimed that Agnes Crampton put up no money of her own for the Holt leases; and that Mrs. Klinger put up approximately $4500. He denied signing the contract produced by Agnes Crampton and claimed that the contract he gave her was a different contract altogether. He was unable to produce a copy of the contract he claimed to have given her. Defendant admitted receiving several hundred dollars from Agnes Crampton, but claimed the money was paid in connection with oil leases in Texas and not in connection with the Holt, Missouri, leases.

One E. J. Corpenny, an experienced bank teller, who qualified as a handwriting expert, examined the purported signature of defendant to the contract produced by

Agnes Crampton (being the same contract set out in the information) and compared that signature with admittedly genuine signatures of defendant, and testified that the signatures were all made by the same hand.

The proof that the signature of William C. Smith is a forgery is circumstantial. The State's evidence tended to show that there was no William C. Smith in the banking business in Holt, and no person by that name who held oil leases near Holt, Missouri. William H. Smith, a banker at Holt, testified that he owned oil leases there in connection with S. R. Andrew, an uncle of defendant. He examined the contract produced by Agnes Crampton, dated October 29, 1920, and the lands described therein and testified that the William C. Smith mentioned therein evidently referred to himself (clearly a mere conclusion) and that he had not signed the contract. He testified that he always signed his name as W. H. Smith. The weakness of the State's proof of forgery as to William C. Smith's signature was materially aided by defendant's own testimony. He testified that the contracts he had on oil leases at Holt were made with the William H. Smith who testified as above referred to, thus connecting up the William C. Smith, whom he represented to Agnes Crampton as having signed the contract, with said William H. Smith, and making an issue for the jury whether or not they were one and the same person.

The record contains a great mass of testimony relating to other transactions of defendant with respect to certain oil leases in Texas. This testimony appears to have been admitted by the trial court on the theory that it had a bearing on the intent of the defendant in the transaction resulting in the charge upon which he was being tried. Also proof was offered concerning goods secured by defendant from the store of Agnes Crampton, and that he had lived under an assumed name with some strange woman. The State was also permitted to show how Agnes Crampton secured the money which she claimed to have invested in the Holt leases. Some of this testimony was put in by the State without ob-

jection from defendant, but a great deal of it went in
over his objection and exception. Since the case must
be retried for reasons hereafter pointed out, it is un-
necessary to consider in detail all the questions raised
on the introduction of such testimony. Upon retrial the
trial court should confine the testimony to the issue of
forgery of the signature of William C. Smith and to
the other issues involved in the crime of uttering such
forged instrument.

Much testimony was offered attacking and support-
ing the reputation of the prosecuting witness for moral-
ity. A number of witnesses testified to the bad repu-
tation of defendant for morality.

I. The first question for our determination is the
character of the charge contained in the information.
We have set it out in full above. Defendant contends
the information charges an offense under
Section 3439, Revised Statutes 1919, and
that such charge is forgery in the fourth degree. On
the other hand, the learned Attorney-General contends
that said information charges an offense under Section
3441, making the offense of uttering forgery in the same
degree that the forging of the particular instrument
would have been.

We confess our inability to determine clearly upon
what sections the pleader intended to base the infor-
mation. We cannot agree with appellant that it is based
on Section 3439. True, the pleader alleges that defend-
ant feloniously had in his possession a forged writing
or instrument by which a pecuniary demand purported
to be created, knowing the same to be forged with intent
to injure and defraud. But the information does not
charge that it was the intent of defendant to injure and
defraud *by uttering the same,* one of the elements of the
offense denounced by said Section 3439. The informa-
tion goes further and charges the *actual* uttering of the
forged instrument. It contains all the allegations es-
sential to a charge under Section 3441, although it also

contains allegations constituting elements of offenses defined in other sections.

II.   But this conclusion does not altogether relieve us of our confusion.  Section 3441 refers us to the appropriate sections denouncing forgery in the different degrees, wherein instruments of various sorts are described.  Said section makes the uttering and passing of such instruments forgery in the same degree as the actual forging of such instruments.

Forgery in
Third Degree

The learned Attorney-General in argument contended that Section 3436 is the forgery section applicable, and we have concluded that said section is the only one to which the facts charged in the information are applicable.  It reads as follows:

"Every person who, with intent to injure or defraud, shall falsely make, alter, forge or counterfeit any instrument or writing, being or purporting to be the act of another, by which any pecuniary demand or obligation shall be or purport to be transferred, created, increased, discharged or diminished, or by which any rights or property whatsoever shall be or purport to be transferred, conveyed, discharged, increased or in any manner affected, the falsely making, altering, forging or counterfeiting of which is not hereinbefore declared to be a forgery in some other degree, shall, on conviction, be adjudged guilty of forgery in the third degree."

The instrument set out in the information did not purport to create a pecuniary demand, that is a money demand, against Smith, whose name the proof tends to show was forged to the instrument, but such instrument does show that property rights of said Smith purported to be transferred or affected as described by said Section 3436.  The instrument is set out by its tenor and it makes no difference what the pleader conceived to be the legal effect of such instrument.  We must determine the character of the instrument from that instrument itself as pleaded *in haec verba*.

III. Section 3436 denounces the offenses therein defined as forgery in the third degree. The trial court submitted the case to the jury as one of forgery in the second degree. The various offenses denounced as forgery in the second degree are found in Sections 3423 to 3431, inclusive. The first five sections deal with forgeries of seals, deeds, records of instruments, judgments and court papers, entries of records, acknowledgments, counterfeiting coins, etc. Sections 3428, 3429 and 3430 deal with the forgery, uttering and possession of forged drafts, checks, bills of exchange, etc., drawn upon incorporated banks. Section 3431 deals with plates for making forged checks, drafts, etc., of incorporated banks. None of these sections cover the forging of a signature to an instrument such as is here under consideration. Of the sections dealing with forgery in the third degree, Section 3436 is the only one broad and general enough in its provisions to cover the facts alleged in the information, which the evidence tends to prove.

**Prejudicial Error.**

The trial court therefore erred in submitting the case to the jury on forgery in the second degree. Nor can it be said that the error was not prejudicial. The situation was different in State v. Bird, 286 Mo. 593, 228 S. W. 751. There the court instructed on manslaughter in the third and fourth degrees upon a trial for an offense committed after the several degrees of manslaughter had been abolished by the Legislature, and the punishment therefor changed to range from the lowest punishment formerly fixed for fourth degree manslaughter up to imprisonment for ten years in the penitentiary. The maximum fixed by the court's instructions was within the maximum fixed by law for manslaughter. It was held that the error was not prejudicial. But in this case the maximum punishment for second-degree forgery exceeded that provided for third-degree forgery by three years and the erroneous statement of that limit in the instruction very likely had something to do with the extent of the punishment assessed by the jury.

Nor can the charge of second degree forgery in the instruction in this .case be treated as surplusage as were the words third and fourth degrees of manslaughter in State v. Bird, supra. Third and fourth degrees of manslaughter were included in the crime of manslaughter as defined by the Laws of 1919. Second-degree forgery and third-degree forgery are separate and distinct offenses. Defendant was therefore convicted of a different offense from that on which he stood charged in the information and of a more serious offense then the one charged against him.

IV. The information charges the forgery of the signatures of Agnes Crampton, William C. Smith and F. G. Andrew, the defendant. The genuineness of Agnes Crampton's signature is admitted, and Variance. the evidence of the State tends to prove the genuineness of the signature of defendant. It is only the genuineness of the signature of Smith which is in issue. The information should charge the facts which the State's proof tends to establish. In the information as it stands there is a variance between the allegation and the proof.

V. Defendant contends that his demurrer to the State's evidence should have been sustained. Since he did not stand upon his demurrer to the State's Sufficient evidence and introduced evidence in his own Proof. behalf, the sufficiency of the evidence must be determined from all the evidence. [State v. Lackey, 230 Mo. 707.]

We have already detailed the evidence somewhat at length. We have reached the conclusion that upon the whole evidence a case for the jury upon third degree forgery was made, and that the case should be again tried and opportunity ·given the State to take the judgment of a jury as to the guilt or innocence of defendant, upon an appropriate information, if the State is advised to file an amended information, and under proper instructions.

The evidence tends to show that the contract was a forgery as to the signature of William C. Smith. True, no Smith of that name was shown to exist, but all the circumstances show the signature was either intended for William H. Smith or it was a fictitious signature. The information should properly charge the fact. The testimony of defendant that the contracts on oil leases which he had at Holt, Missouri, were made with William H. Smith, a banker of that city, taken in connection with that of Agnes Crampton, that defendant told her he had a contract with a man named Smith, a millionaire banker at Holt, circumstantially connects William C. Smith and William H. Smith as one and the same person and tends to show that the signature "William C. Smith" was a forgery. Since the testimony of the State is that defendant procured the signature of Smith, it tends to prove that defendant knew such signature was a forgery. There is no question that the other elements of the offense denounced in Section 3441 are supported by substantial evidence on the part of the State. The contention that no case was made for the jury must be overruled.

VI. Numerous other assignments of error are made by counsel for defendant, but we think what we have already said sufficiently disposes of the case and indicates our views upon such assignments and is sufficient to serve as a guide to counsel and court upon a retrial in avoiding a repetition of errors committed in the former trial.

The judgment is reversed and the cause remanded. All concur.