ARKANSAS UNIFORM & LINEN SUPPLY
COMPANY, INC., et al. *v.* INSTITUTIONAL
SERVICES CORPORATION, et al.

85-150                                        700 S.W.2d 358

Supreme Court of Arkansas
Opinion delivered November 25, 1985

*Clark & Adkisson*, for appellants.

*Henry & Henry*, for appellees.

STEELE HAYS, Justice. Conway Memorial Hospital, a non-profit corporation, has operated a general hospital in Conway, Arkansas since 1938. The lands and improvements are leased from the City of Conway; the equipment and personalty belong to the corporation. The articles of incorporation provide for seven members who are also the directors of the corporation. When a

vacancy occurs or a director's term expires, his or her successor is nominated by the board, subject to the confirmation of the Conway City Council. In the event of dissolution all assets of the corporation immediately vest in the City of Conway.

Until 1983 the hospital provided its own laundry service, but when its equipment became obsolete or inadequate, the board formed Institutional Services Corporation under the Arkansas Business Corporation Act to supply laundry service for itself and other hospitals near Conway, whose business ISC solicited. The corporation now regularly supplies laundry service to six other hospitals in central Arkansas. Thus far ISC has operated at a loss but that is expected to change. CMH owns all of the stock of ISC and the board of Conway Memorial Hospital serves as the board of ISC. No compensation is paid the board members. Meetings of the two boards are held simultaneously and the agendas are considered indiscriminately. ISC leases vehicles from CMH, which CMH is purchasing, as well as the land and equipment used for the laundry. CMH sets the rental payments from ISC in amounts equal to its own payments for the land and vehicles ISC leases.

Appellants are an individual and two corporations operating commercial laundries in Pope, Pulaski and Independence Counties. They filed suit against CMH and ISC to obtain judgments of $50,000 each, and to enjoin the defendants from operating a commercial laundry for anyone but themselves. The Chancellor held for the defendants and the plaintiffs have appealed. Three errors are asserted on appeal: (I) The Chancellor erred in refusing to hold that the arrangement between the City of Conway, Conway Memorial Hospital and Institutional Services Corporation violates Article 12, Section 5 of the Arkansas Constitution, (II) erred in holding the arrangement does not violate Amendment 13 of the Arkansas Constitution, and (III) in refusing to hold that the sole ownership of Institutional Services Corporation by Conway Memorial Hospital is an ultra vires act.

I

Article 12, Section 5 of the Arkansas Constitution reads:

> 5. *Political subdivisions not to become stockholders in or lend credit to private corporations.* No county, city, town

or other municipal corporation shall become a stockholder in any company, association or corporation; or obtain or appropriate money for, or loan its credit to, any corporation, association, institution or individual.

Appellants point out that ISC has no identity of its own—the two corporations have the same board members, a single executive director, the same meeting times, intertwined agendas, all of which must be conceded. Unquestionably ISC is the puppet of CMH. But the issue is not whether ISC is the alter ego of CMH, but whether CMH is the alter ego of the Conway City Council, for unless that question can be answered affirmatively, the relationship between CMH and ISC is of little relevance in the context of the case before us.

Appellants cite two cases: *Adams* v. *Bryant*, 236 Ark. 865, 370 S.W.2d 432 (1963), and *Halpert* v. *Helena-West Helena Industrial Development Corporation*, 226 Ark. 620, 291 S.W.2d 802 (1956), but neither is controlling here. In *Adams* v. *Bryant*, by dictum, we said the prohibition of Article 12, Section 5, applied to the Clarksville Light and Water Commission, which used a part of its revenues to purchase $5,000 worth of stock in an industrial development venture. But plainly the Clarksville Light and Water Commission was the arm of the municipal government of Clarksville and was subject to its control. When it bought stock in a private venture the City of Clarksville was, in effect, the purchaser. We do not equate the status of the Clarksville Commission with that of CMH.

In *Halpert*, we struck down a statute (Act 404 of 1955) which purported to empower municipalities to purchase a "membership" in industrial development corporations as violating Article 12, Section 5. But as with *Adams* v. *Bryant*, the distinction is clear—the city was the purchaser/investor in each instance, unlike the situation presented in this case.

Appellants rely heavily on that section of the articles of incorporation of CMH pertaining to the selection of its directors and, to a lesser extent, on that section dealing with the disposition of its assets should dissolution occur. Neither governs the outcome here. The provision on dissolution which directs that all assets revert to the City of Conway is there to meet the requirements for charitable tax exempt status under Section

501(c)(3) of the Internal Revenue Code and Ark. Stat. Ann. § 64-1924 (Repl. 1980). It simply insures that assets acquired for charitable use will never be put to private use. It does not strengthen the premise that CMH is simply an extension of the city council.

Nor does the provision pertaining to the replacement of board members give us reason to pause. Appellants' brief argues repeatedly that the Conway City Council *selects* the board of CMH. That is a misstatement. The fact is the hospital board selects its own members, the council merely *confirms* the board's nominees. Moreover, it is undisputed that over the nearly fifty years of the hospital's existence the council has never failed to confirm a nomination, an unlikely record if the hospital's autonomy were threatened.

Of greater significance is the fact the hospital itself belongs to the City of Conway and is leased to the hospital corporation. But that arrangement is expressly sanctioned by Ark. Stat. Ann. § 19-4713 (Repl. 1980), which gives broad authority to municipalities to engage in and adopt the methods here challenged and recognized by Section 1, Amendment 32 to the Arkansas Constitution. The rationale behind these provisions is the obvious benefits which accrue to a community from the availability of hospital services. We conclude that the leasing of a hospital by municipal government to be operated by a nonprofit corporation is not a violation of Article 12, Section 5.

## II

Amendment 13 of the Arkansas Constitution prohibits a municipality from ever granting financial aid toward the construction of railroads or other private enterprises operated by any person, firm or corporation. Appellants cite no authority for the argument that money to which the City of Conway has a revisionary interest, that is, money belonging to CMH, is being funneled into a private corporation, ISC, in violation of Amendment 13. The executive director of the two corporations testified the expenses of operating ISC currently exceed its revenues and the loss is being paid by funds of CMH in the form of a promissory note to CMH from ISC. Appellants argue, therefore, that since CMH is supplying financial aid to ISC, the end result is that if CMH were dissolved, the assets reverting to the City of Conway

would be reduced by the balance owed by ISC.

But the answer, as with the first argument, lies in the fact that CMH is not the arm of the city council and Conway is not granting financial aid to ISC either directly or indirectly. The reversion of assets to the City of Conway in the event of a dissolution is not an expectancy, but a mere possibility, and one which may never occur. Besides, as appellees point out, the reverter clause applies only to assets belonging to CMH at the time of dissolution and has no effect on assets prior to that uncertain event.

### III

The final argument, unsupported by authority, is that ownership by CMH of ISC is an ultra vires act. Granted, a nonprofit corporation may exercise only such powers as are reasonably necessary to carry out the purposes for which the corporation was created, but it is undisputed that laundry service is essential to the operation of a hospital. ISC provides no dry cleaning service, which appellants might properly challenge, it provides only the laundry services attributable to hospital needs.

When its in-house laundry could no longer meet the modern needs of the hospital, CMH was confronted with outlays in the range of $450,000 for a building alone, not counting new laundry equipment. The method CMH settled on involved a much lesser investment. And while some operating loss is occurring at this stage, the expectation, at least, is that that situation is temporary. The articles of incorporation of CMH empower the corporation to do all things "necessary, convenient, useful or incidental" to attain the purposes of its existence and we cannot say the means selected by CMH to provide expanded laundry services is an excessive exercise of powers. See generally, *Hilger v. Harding College, Inc.*, 231 Ark. 686, 331 S.W.2d 851 (1960); *School District of Fort Smith v. Howe*, 62 Ark. 481, 37 S.W. 717 (1896).

We have no doubt these seven hospitals could by a variety of methods pool their laundry requirements and reach essentially these same ends. The fact that those ends are achieved by a corporation owned by CMH does not, of itself, render those methods unlawful. The portals of a free enterprise marketing

system are as open to charitable entrepreneurs as to private ones, witness the gift shops, restaurants, clothing and variety stores operated by charitable corporations in many communities. There is no indication that the seven hospitals with ISC are not charitable institutions.

Affirmed.

HICKMAN, J., dissents.

PURTLE, J., not participating.

DARRELL HICKMAN, Justice, dissenting. I disagree with the majority because I think the hospital is an arm of the city and is, therefore, prohibited from those activities in which the city may not engage. The city may not operate a laundry and compete with private firms and neither may the city's hospital.

The hospital in this case is a public, not private, hospital in Conway, Arkansas. The city apparently built it, or acquired it. Such ownership is expressly permitted. Amendment 32 to the Arkansas Constitution titled "County or City Hospitals" provides for taxes to support such "public" hospitals. Ark. Stat. Ann. § 19-4713 (Repl. 1980) also provides that cities can own hospitals.

The Arkansas Constitution recognizes other endeavors that might otherwise be considered private endeavors. For example, Amendment 49 to the constitution provides for the issuance of bonds after an election for securing and developing industry. The amendment was necessary perhaps not just to expressly provide for taxing or bonded indebtedness, but also to overcome other provisions of the constitution which limit and define public endeavors. See Ark. Const. Art. 16 as amended by Amend. 13.

At the same time Article 16 provides: "No municipality shall ever grant *financial aid* toward the construction of railroads or other private enterprises operated by any person, firm or corporation, . . ." (Italics supplied.)

Other relevant provisions on the use of municipal credit and property bear mentioning. The first sentence of Amendment 13 reads: "Neither the State nor any city, county, town or other municipality in this State, shall ever lend its credit for any purpose whatever . . ."

Article 12, Section 5 reads: "No county, city, town or other municipal corporation shall become a stockholder in any company, association or corporation; or obtain or appropriate money for, or loan its credit to, any corporation, association, institution or individual."

Under these provisions, Conway may not own or participate in the ownership of this commercial laundry. The majority says this is not the city's hospital and that it belongs to the nonprofit corporation. What then is the purpose of the corporation—to run someone else's hospital? It is still a public hospital—Conway's public hospital. The city owns the hospital, that is not denied. The hospital owns all the stock in the laundry; the hospital owns the land, building, equipment, and eight vehicles used by the laundry. The board members of the hospital are the board members of the laundry. It does not take a large step in logic to realize that the city, in fact, owns the laundry. But the majority prefers to ignore such logic.

We might as well say this nonprofit corporation could convert itself into a corporation for profit and take over any private endeavor. What the city may not do directly, it may not do indirectly. *Adams* v. *Bryant*, 236 Ark. 865, 370 S.W.2d 432 (1963); *Talbert* v. *Helena-West Helena Industrial Development Corp.*, 226 Ark. 620, 291 S.W.2d 802 (1956).

The majority's holding means that this corporation can, under the scheme approved in this case, enter into any private business, a dry goods store, a drug store, or even a dress shop. It would be better to simply hold, as the constitution states clearly in several places, that the city cannot directly, or through its agencies, operate a private business, unless that endeavor has express constitutional sanction.

In *Lord* v. *Denver*, 58 Colo. 1, 143 P. 284 (1914), a city bond issue was considered which would aid a railroad. The court found no authority that even hinted that " . . . it is within the ordinary powers of a municipal corporation to construct an improvement, convenience, or necessity with the avowed and declared purpose of selling the same or an interest therein to a private person or corporation." This seems to be repugnant to every conception of the term "municipal purpose." The majority would like to alter the facts and find the laundry is not commercial, or a corporation

for profit. That is, of course, an impermissible act on their part.

There is no reason to add to the blur that exists between what is a public and a private endeavor; running a commercial laundry is not a public endeavor.