The Honorable W. Randall Wright Prosecuting Attorney Eighth Judicial District North 301 W. 16th Street P.O. Box 1317 Hope, AR 71802-1317
Dear Mr. Wright:
I am writing in response to your request for my opinion on the following questions:
 1. What are the procedures with which Nevada County would proceed to sell a county-owned abandoned hospital to a private organization?
 2. What are the procedures with which Nevada County would proceed to enter into a lease/purchase agreement with a private organization for a county-owned abandoned hospital?
 3. Would it be permissible for Nevada County to deed a county-owned abandoned hospital to the Nevada County Industrial Development Corporation?
Based on information provided in support of several previous requests, it is my understanding that the facility was abandoned in June 1995; that the Nevada County voters subsequently approved its sale; and that certain of the property was sold pursuant to sealed bids, but not the physical plant itself. For purposes of this opinion, I will assume that the physical plant comprises the subject of your request.
RESPONSE
Question 1: What are the procedures with which Nevada County wouldproceed to sell a county-owned abandoned hospital to a privateorganization?
My predecessor has twice before addressed questions posed by Eighth Judicial District Prosecuting Attorney Brent Haltom relating to the proposed sale of the abandoned hospital at issue in your request. See
enclosed Ark. Ops. Att'y Gen. Nos. 96-126 and 96-262. These opinions adequately set forth the conditions under which the county might proceed to sell the abandoned hospital, subject to several qualifications discussed below. I will not here repeat my predecessor's analysis, with which I fully concur, instead restricting myself to offering some additional observations.
Given the county's reported previous attempt to sell the facility through a process of sealed bids following voter approval, I gather the quorum court at one time considered the facility to remain a "hospital" subject to the conditions set forth at A.C.A. § 14-16-105(g), which provides in pertinent part:
 County hospitals constructed or maintained in whole or part by taxes approved by the voters shall not be sold unless the sale is approved by the majority of electors voting on the issue at a general or special election.
Regardless of whether the abandoned facility indeed remains a "hospital," unless one of the exceptions discussed below applies, I believe the sale must be conducted in accordance with the appraisal, notice and bidding provisions set forth in the earlier subsections of A.C.A. § 14-16-105. Given the amount of time that has passed since the previous effort to sell the facility, I believe a new appraisal is in all likelihood warranted. I do not believe the county needs to conduct a new election approving the sale.
In light of the circumstances, it is debatable whether the facility should be classified as a "hospital."[1] Your questions imply that the county is planning to dispose of this property for use as something other than a hospital. My immediate predecessor addressed a similar situation in the enclosed Ark. Op. Att'y Gen. No. 97-098, in which a prosecuting attorney asked whether the county was obligated to observe the election requirement of A.C.A. § 14-16-105(g) before selling for another purpose a building that had been abandoned as a hospital seven years previously. My predecessor concluded that one could reasonably argue that the statute would not apply under these circumstances, although the ultimate determination on this question would be one of fact beyond the scope of this office to resolve. However, in the enclosed Ark. Op. Att'y Gen. No.90-158, one of my earlier predecessors opined that the language "hospitals constructed or maintained in whole or in part by taxes approved by the voters" might well be read to apply to any structure initially built as a hospital regardless of whether it had since been abandoned. Perhaps recognizing that this reading might seem strained in an instance when the structure had not been used as a hospital for numerous years, my predecessor suggested that legislative clarification would be welcome. I assume the legislative purpose behind the statute was to assure that taxpayers would not be involuntarily deprived of a working hospital they had voted to build or maintain — an assumption that would suggest that the statute would not apply to an abandoned hospital.[2]See Arkansas Uniform Linen Supply Co. v. Institutional ServicesCorp., 287 Ark. 370, 374, 700 S.W.2d 358 (1985) (acknowledging as the "rationale" for a statute allowing lease to a hospital corporation "the obvious benefits which accrue to a community from the availability of hospital services"). However, I agree that the statute would benefit by legislative or judicial clarification.
Opinions 96-126 and 96-292 also set forth the framework for determining how to proceed in the event the facility does not qualify as a "hospital." Section 14-16-105 generally addresses the procedure for selling county property. With respect to the discussion of "surplus" property in Opinion 96-126, I would merely add that A.C.A. § 14-16-106 has since been amended by Act 364 of 1997. The statute now provides that both real and personal property deemed "surplus" by the county judge may be sold at public auction to the highest bidder after proper notice. However, if the facility is deemed both "surplus" real property and a "hospital," I believe A.C.A. § 14-16-105(g) will apply, since a provision addressing a particular issue (viz., the sale of a county hospital) will control over one addressing a broader category (viz., the sale of surplus county real estate in general). See Scott v. Greer, 229 Ark. 1043, 1048,320 S.W.2d 262 (1959).
 Assuming the facts to be as summarized above, I do not believe any of the other exceptions discussed in the previous opinions relating to this facility would apply. Accordingly, it would appear that a process of public notice and bidding will be required. However, only a finder of fact could conclusively determine this to be the case.
Question 2: What are the procedures with which Nevada County wouldproceed to enter into a lease/purchase agreement with a privateorganization for a county-owned abandoned hospital?
The rules with respect to the leasing of county property are summarized in the response to Question 3 in the enclosed Ark. Op. Att'y Gen. No.96-292. As this summary reflects, at issue is the application of A.C.A. § 14-16-110, which provides that property deemed unusable by the county in the future may be leased to "any lawfully incorporated nonprofit, nonsectarian educational institution; any lawfully incorporated nonprofit, nonsectarian boys' or girls' club; or any lawfully incorporated quasi-public, nonprofit, nonsectarian organizations including, but not limited to, community mental health centers." In your question, you merely describe the proposed lessor as "a private organization." Although it appears doubtful that such a lease would be permitted under the restrictions of the statute, determining as much will involve a factual inquiry I am neither equipped nor authorized to undertake.
It also appears likely that a finder of fact would characterize the "lease/purchase agreement" referenced in your question as in fact being a conditional sales contract. As my predecessor noted in Ark. Op. Att'y Gen. No. 94-092: "Whether a particular lease/purchase agreement is in actuality a sale requires a factual determination."[3] In my opinion, if a finder of fact concludes that the proposed transaction is actually a sale, the principles set forth in my response to your first question would apply.
Question 3: Would it be permissible for Nevada County to deed acounty-owned abandoned hospital to the Nevada County IndustrialDevelopment Corporation?
I assume you are asking whether the county may give the facility to the Nevada County Industrial Development Corporation. I am enclosing for your information Ark. Op. Att'y Gen. No. 1999-408, in which I discuss at some length the circumstances under which a county may give away property. As noted in my previous opinion, the Arkansas Supreme Court has unequivocally declared that a city, town or county may not purchase a "membership" in an industrial development corporation. Halbert v.Helena-West Helena Industrial Development Corp., 226 Ark. 620, 625,291 S.W.2d 802 (1956). The Court reasoned that any such purchase would constitute an impermissible donation of government resources to a private, nonprofit corporation in derogation of Ark. Const. art. XII, §5, which forbids the gratuitous transfer of county or municipal funds "to any corporation, association, institution or individual." Id. In my opinion, this constitutional proscription clearly bars the county from simply deeding the abandoned hospital to the Nevada County Industrial Development Corporation. However, as reflected in my response to Question 3 in Opinion 1999-408, nothing precludes the county from negotiating a contract with an industrial development corporation so long as it is supported by adequate consideration.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP/JHD:cyh
Enclosures
[1] I should note that A.C.A. § 14-265-103 expressly authorizes the county to sell "any land, buildings, improvements, or facilities of any and every nature whatever that can be used for hospitals, nursing homes, rest homes, or related facilities within or near the municipality or county." Even assuming the facility in its apparent state of disrepair falls within this description, as seems likely, I still believe the sale must be conducted pursuant to the principles discussed in this and my predecessor's opinions.
[2] Subsection 14-16-105(g) of the Code appears to envision the sale of a hospital for some other use. The requirement of voter approval does not apply if the quorum court elects to sell or lease a hospital for continued use as a medical facility. In Bell v. Crawford County, 287 Ark. 251,697 S.W.2d 910 (1985), the Supreme Court held that a quorum court has the right to sell or lease a hospital on its own initiative to any health services organization pursuant to Ark. Stat. Ann. 17-5404, which is currently codified as A.C.A. § 14-263-106. Accord Richerson v. Bearden,278 Ark. 350, 645 S.W.2d 946 (1983) (approving such a procedure for the lease of a hospital).
[3] In Ark. Op. Att'y Gen. No. 91-276, my predecessor offered the following discussion of the factual questions to be addressed in determining whether a purported lease is in fact a conditional sales contract:
 Although title may not transfer to the lessee, other provisions of the "lease" may indicate that the lessee has the ownership interest in the property. See generally, (in the usury context), Hill v. Bentco Leasing, Inc., 288 Ark. 623, 708 S.W.2d 608 (1986), and Bell v. Itek Leasing Corp., 262 Ark. 22, 555 S.W.2d 1 (1977). The court in each case noted several factors which may indicate that a "lease" is actually a "sale," i.e.: 1) the payment over the lease term of an amount equal to or greater than the stated price of the goods, 2) all risk of loss of the property placed on the lessee, 3) remedies upon default are those ordinarily accorded to a conditional seller, (lessor could declare the entire amount due, repossess the equipment, sell it and hold the lessee liable for any deficiency), 4) any surplus on sale of the property would belong to the lessee, and 5) an option to buy the property for a nominal amount.
The court in Bell v. Itek Leasing, supra, noted that:
 It has been suggested that the most fruitful single test to distinguish a sale from a true lease is the absence of any appreciable residual in the lessor at the expiration of the lease. [Citations omitted.] This is the net effect of a purchase option for a nominal sum, since exercising that option is the only prudent course for the lessee. [Citations omitted.] Therefore, the lessor's only interest in the goods at the end of the lease is the nominal amount of the purchase option. There are other situations, however, where there is no provision for a purchase option by the lessee, and title never technically passes from the lessor to the lessee, but the lessor still has no expectation of a material interest in the property at the expiration of the lease term. The lessee in such cases is deemed to have become the owner of the property.
Id. at 627.