The Honorable Jan A. Judy State Representative 202 W. Maple Street Fayetteville, AR 72701-4132
Dear Representative Judy:
I am writing in response to your request for my opinion regarding the City of Fayetteville's proposed participation in the construction of a new Boys' and Girls' Club in Fayetteville. Specifically, on behalf of Fayetteville City Attorney Kit Williams, you ask me to address the following questions:
 1. Can the City of Fayetteville appropriate 2 mills for two years (approximately 2.3 million dollars) and give this money to the Fayetteville Boys and Girls Club, Inc. (an independent, non-profit corporation) for their use to assist in the construction of a new facility on their land?
 2. Can the City of Fayetteville build on its own land adjoining the new Boys and Girls Club, a parking lot and playing fields and enter into a joint operational and use agreement with the Boys and Girls Club for access to the parking lot and playing fields?
 3. Can the City contractually agree with the Boys and Girls Club to provide operating funds for its recreational programs even if access to this facility and the Boys and Girls Club organization requires membership dues? Should our monetary support require "public" access to the facility by funding scholarships for Fayetteville youths or requiring other types of public access?
RESPONSE
In my opinion, the answer to your first question is "no." The answer to your second question will depend on the precise terms of the proposed "joint operational and use agreement." The crucial issue will be whether the agreement is supported by adequate consideration. As a general proposition, absent sufficient consideration, I do not believe the city may expend public funds to provide a particular benefit to the members of a private, nonprofit corporation. With respect to your third question, I believe providing recreational services exclusively to a private club's members is constitutionally suspect, regardless of whether that membership is broadened by the granting of publicly funded scholarships. Accordingly, I believe that any contract of the sort you propose should definitely require "other types of public access."
Question 1: Can the City of Fayetteville appropriate 2 mills for twoyears (approximately 2.3 million dollars) and give this money to theFayetteville Boys and Girls Club, Inc. (an independent, non-profitcorporation) for their use to assist in the construction of a newfacility on their land?
No. Mr. Williams indicates in his correspondence that he has reviewed the enclosed Ark. Op. Att'y Gen. No. 1999-408, in which I discuss in some detail the history of the Arkansas Supreme Court's pronouncements on the issue of municipal donations to private organizations. As I noted in that opinion, the leading case of Halbert v. Helena-West Helena IndustrialDevelopment Corp., 226 Ark. 620, 625-26, 291 S.W.2d 802 (1956) "establishes beyond all question that a municipality cannot contribute to a private, nonprofit corporation regardless of whether the corporation serves a `public purpose.'" The court in Halbert based this conclusion on Ark. Const. art. 12, § 5, which provides in pertinent part: "No county, city, town or other municipal corporation shall . . . appropriate money for, or loan its credit to, any corporation, association, institution or individual." Applying Halbert, I concluded in my previous opinion that A.C.A. § 23-111-509(e)(2)(C) is unconstitutional in providing that specified public funds "shall be made available to and used by the Girls' Club and Boys' Club or similar nonprofit charitable organizations. . . ." I believe this same conclusion would apply to any city ordinance levying a tax for the benefit of the Fayetteville Boys' and Girls' Club, Inc.
Question 2: Can the City of Fayetteville build on its own land adjoiningthe new Boys and Girls Club, a parking lot and playing fields and enterinto a joint operational and use agreement with the Boys and Girls Clubfor access to the parking lot and playing fields?
I cannot answer this question without knowing the terms of the proposed "joint operational and use agreement." As a general proposition, answering this question will entail applying the principles I summarized at the conclusion of Ark. Op. Att'y Gen. No. 1999-408:
 [N]othing in the constitution precludes the county from contracting with a private nonprofit charity, so long as the contract is supported by adequate consideration and serves a proper governmental end. Cities and counties clearly can enter into contracts that are supported by valid consideration. See Ops. Att'y Gen. No. 98-025 and 97-250; A.C.A. § 14-54-101(2); City of Ft. Smith v. Bates, 260 Ark. 777, 544 S.W.2d 525 (1976); City of Harrison v. Boone County, 238 Ark. 113, 378 S.W.2d 665 (1964). Moreover, this authority includes the power to contract with nonprofit organizations. See Woodruff v. Shockey, 297 Ark. 595, 764 S.W.2d 431
(1989). Such contracts have been upheld as not being in violation of Article 12, § 5. See Arkansas Uniform Linen Supply v. Institutional Services Corp., 287 Ark. 370, 700 S.W.2d 358 (1985). To the extent, then, that the provision of recreational services for young people is an appropriate governmental function, the county might contract for its performance by, say, a Girls' Club or Boys' Club. Again, the decision to undertake such a contract would necessarily be based on factual considerations I am unprepared and unauthorized to review. I advise you to consult with local counsel regarding such matters.
With respect to the issue of consideration, it is well established that a municipal corporation may convey public property or an interest therein based upon consideration other than money. See, e.g., City of Blythevillev. Parks, 221 Ark. 734, 255 S.W.2d 962 (1953) and Little Rock Chamber ofCommerce v. Pulaski County, 113 Ark. 439, 168 S.W. 848 (1914). As my predecessor noted in Ark. Op. Att'y Gen. No. 96-351:
 The Arkansas Supreme Court has held that even non-monetary consideration can be adequate if a "public advantage" will result from the lease. In City of Blytheville v. Parks, 221 Ark. 734, 255 S.W.2d 962 (1953), the Arkansas Supreme Court upheld a bond issue used to finance the purchase of land which was immediately thereafter conveyed to the federal government without money consideration. The court held that "public advantage" constituted consideration. The court held that there was not a true "donation" of the land, because 1) there were many benefits which the city would receive in terms of increases in business and population, and 2) the city included a reverter clause in the deed which required that the land be returned to the city (greatly improved) if it ceased to be used for the purposes of the grant.
I am neither authorized nor equipped to opine whether the "joint operational and use agreement" referenced in your request would be supported by adequate consideration under this standard. Only a finder of fact could make this determination based upon a close review of the agreement itself. However, I believe the agreement might well be constitutionally suspect if it merely provided that the city, in exchange for nominal consideration, would construct facilities to which dues-paying members of the Boys' and Girls' Club would have some privileged access. In my opinion, a finder of fact might well interpret such an agreement as a disguised, impermissible donation of public assets to a private charitable organization. Given the apparent absence of an actual draft agreement, I can offer no more on this issue.
Question 3: Can the City contractually agree with the Boys and Girls Clubto provide operating funds for its recreational programs even if accessto this facility and the Boys and Girls Club organization requiresmembership dues? Should our monetary support require "public" access tothe facility by funding scholarships for Fayetteville youths or requiringother types of public access?
Again, determining the enforceability of any such contractual agreement will entail a factual inquiry I neither can nor may undertake. However, I am struck by the fact that the first of your two questions recites no consideration flowing from the Boys' and Girls' Club to the city. If you are asking whether the city can simply provide a private, nonprofit charitable corporation with operating funds to conduct recreational programs for its paying members, I believe the clear answer is "no." In my estimation, any such agreement would be tantamount to an impermissible donation of public money. Moreover, I strongly doubt the constitutional infirmity of any such agreement could be remedied by "funding scholarships for Fayetteville youths" — at least not if eligibility for the scholarships were restricted to any meaningful extent.
I agree with your implied concession that "public access" would be a crucial consideration in an agreement of the sort contemplated. In this regard, I feel obliged to repeat one sentence from the previous opinion excerpted above: "To the extent . . . that the provision of recreationalservices for young people is an appropriate governmental function, the county [or city] might contract for its performance by, say, a Girls' Club or Boys' Club." Ark. Op. Att'y Gen. No. 1999-408 (emphasis added). On its face, it would generally appear that providing youth recreational services is a laudable goal well within the city's discretion. As a theoretical proposition, providing recreational services to a limited group of the city's youth — say, at-risk minority children — might further be permissible, although determining as much will necessarily involve a factual analysis. However, in the wake of Halbert, I can opine that providing recreational services exclusively to a private club's members is not an "appropriate governmental function," regardless of whether that membership is broadened by the granting of publicly funded scholarships. In short, I believe that if the city were to contract with Boys' and Girls' Club, Inc. to provide recreational services to the city's youth, the contract could restrict access to those services only in ways the city might if it were providing the services itself. Accordingly, my response to the second part of your question is that the city should most definitely require "other types of public access" if it contracts with Boys' and Girls' Club, Inc.
Assistant Attorney General Jack Druff prepared the foregoing, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:JD/cyh
Enclosure