The Honorable H.G. Foster Prosecuting Attorney 20th Judicial District 801 Locust, Box 1105 Conway, AR 72032
Dear Mr. Smith:
I am writing in response to your request for my opinion on the following questions regarding two land transfers you report are being considered by the Searcy County Quorum Court:
 1. Can the County transfer property to a non-profit, warm water therapy association as "like kind" consideration for the entity to receive funding from a grant for a water therapy facility to benefit those in need of such therapy for medical conditions?
 2. Can the County transfer property to a non-profit, industrial corporation who will then oversee all aspects of the sale of said property(ies) to individuals, companies, etc. for commercial, industrial purposes to benefit the expansion and growth of jobs and population of Searcy County, Arkansas? The County would receive one-half of the sale price for each parcel of property sold, to reimburse the County for professional fees and road work in developing those properties.
RESPONSE
Although your questions raise certain issues of fact that I am unable and unauthorized to address, I believe a court would almost certainly conclude that both proposed conveyances would offend Ark. Const. art. 12, § 5.
Question 1: Can the County transfer property to a non-profit, warm watertherapy association as "like kind" consideration for the entity toreceive funding from a grant for a water therapy facility to benefitthose in need of such therapy for medical conditions?
Although this request raises factual issues I am neither equipped nor authorized to address, I strongly suspect a reviewing court would answer your question "no."
If I have properly interpreted your question, the county in this instance is contemplating conveying county property to a non-profit corporation, which by virtue of the conveyance will qualify to receive grant funds that will enable it to construct and to operate a water-therapy facility. Presumably because this facility would benefit county residents, you have characterized the conveyance in contractual terms as `like kind' consideration."
Before addressing the contractual issues raised by your question, I should note my conviction that the conveyance at issue would be constitutionally prohibited if it took the form of a straightforward donation of public property to a private, nonprofit corporation. I am enclosing for your information Ark. Op. Att'y Gen. No. 1999-408, in which I discuss at length the history of the Arkansas Supreme Court's pronouncements on the issue of municipal donations to private organizations. As I noted in that opinion, the leading case of Halbertv. Helena-West Helena Industrial Development Corp., 226 Ark. 620,625-26, 291 S.W.2d 802 (1956) "establishes beyond all question that a municipality cannot contribute to a private, nonprofit corporation regardless of whether the corporation serves a `public purpose.'" The court in Halbert based this conclusion on Ark. Const. art. 12, § 5, which provides in pertinent part: "No county, city, town or other municipal corporation shall . . . appropriate money for, or loan its credit to, any corporation, association, institution or individual."
The analysis becomes somewhat more complicated if, as you verge on doing in your question, one characterizes the conveyance of the property as payment offered in consideration of the private, nonprofit corporation's contractual provision of services to the public. I discussed this issue in Ark. Op. Att'y Gen. No. 2001-035, in which I addressed, inter alia,
whether the City of Fayetteville could devote public property to Girls and Boys Club operations subject to a purported "joint operational and use agreement." In considering this question, I offered the following analysis:
 As a general proposition, answering this question will entail applying the principles I summarized at the conclusion of Ark. Op. Att'y Gen. No. 1999-408:
 [N]othing in the constitution precludes the county from contracting with a private nonprofit charity, so long as the contract is supported by adequate consideration and serves a proper governmental end. Cities and counties clearly can enter into contracts that are supported by valid consideration. See Ops. Att'y Gen. No. 98-025 and 97-250; A.C.A. § 14-54-101(2); City of Ft. Smith v. Bates, 260 Ark. 777, 544 S.W.2d 525 (1976); City of Harrison v. Boone County, 238 Ark. 113, 378 S.W.2d 665 (1964). Moreover, this authority includes the power to contract with nonprofit organizations. See Woodruff v. Shockey, 297 Ark. 595, 764 S.W.2d 431
(1989). Such contracts have been upheld as not being in violation of Article 12, § 5. See Arkansas Uniform Linen Supply v. Institutional Services Corp., 287 Ark. 370, 700 S.W.2d 358 (1985). To the extent, then, that the provision of recreational services for young people is an appropriate governmental function, the county might contract for its performance by, say, a Girls' Club or Boys' Club. Again, the decision to undertake such a contract would necessarily be based on factual considerations I am unprepared and unauthorized to review. I advise you to consult with local counsel regarding such matters.
 With respect to the issue of consideration, it is well established that a municipal corporation may convey public property or an interest therein based upon consideration other than money. See, e.g., City of Blytheville v. Parks, 221 Ark. 734, 255 S.W.2d 962 (1953) and Little Rock Chamber of Commerce v. Pulaski County, 113 Ark. 439, 168 S.W. 848
(1914). As my predecessor noted in Ark. Op. Att'y Gen. No. 96-351:
 The Arkansas Supreme Court has held that even non-monetary consideration can be adequate if a "public advantage" will result from the lease. In City of Blytheville v. Parks, 221 Ark. 734, 255 S.W.2d 962 (1953), the Arkansas Supreme Court upheld a bond issue used to finance the purchase of land which was immediately thereafter conveyed to the federal government without money consideration. The court held that "public advantage" constituted consideration. The court held that there was not a true "donation" of the land, because 1) there were many benefits which the city would receive in terms of increases in business and population, and 2) the city included a reverter clause in the deed which required that the land be returned to the city (greatly improved) if it ceased to be used for the purposes of the grant.
 I am neither authorized nor equipped to opine whether the" joint operational and use agreement" referenced in your request would be supported by adequate consideration under this standard. Only a finder of fact could make this determination based upon a close review of the agreement itself. However, I believe the agreement might well be constitutionally suspect if it merely provided that the city, in exchange for nominal consideration, would construct facilities to which dues-paying members of the Boys' and Girls' Club would have some privileged access. In my opinion, a finder of fact might well interpret such an agreement as a disguised, impermissible donation of public assets to a private charitable organization. Given the apparent absence of an actual draft agreement, I can offer no more on this issue.
As in the opinion excerpted above, I am neither authorized nor situated to opine whether the arrangement you describe would indeed amount to a contract and whether it would be supported by sufficient consideration to pass constitutional muster. However, I strongly suspect a finder of fact would answer both questions in the negative. As posed, your question recites as "consideration" flowing from the "warm water therapy association" to the county nothing more than the association's pledge to seek grant funds that would enable it to commence business operations. The purported contract in this instance thus appears to involve nothing more than the county's donating land to what I presume is or would be a private, nonprofit corporation, whose ability to contract for services with private citizens for some reason depends on the donation. I consider it almost certain that a court would decline to characterize this arrangement as a bona-fide contract supported by adequate consideration, instead deeming it a constitutionally impermissible donation of public property to a private entity.
Question 2: Can the County transfer property to a non-profit, industrialcorporation who will then oversee all aspects of the sale of saidproperty(ies) to individuals, companies, etc. for commercial, industrialpurposes to benefit the expansion and growth of jobs and population ofSearcy County, Arkansas? The County would receive one-half of the saleprice for each parcel of property sold, to reimburse the County forprofessional fees and road work in developing those properties.
In my opinion, the answer to this question is "no." As described, the proposed transaction would entail an outright gift of the property by the county to an industrial development corporation — an action the Arkansas Supreme Court clearly declared violative of Ark. Const. art. 12, § 5 inHalbert. 226 Ark. at 625 ("When the Arkansas Legislature allowed the creation of local development corporations as private non-profit corporations, it could not at the same time allow counties or municipalities to grant financial aid to such corporations."). See
discussion in the attached Ark. Op. Att'y Gen. No. 1999-408. As I noted in my response to your previous question, the fact that this gift might indirectly serve a public purpose cannot cure this constitutional infirmity. Simply put, a county may never give public property to a private, nonprofit corporation. Moreover, I consider it immaterial that the county would receive one-half of the sales price of lots eventually sold by the "industrial corporation." You report that the payment would not represent consideration for the conveyance of the property, but rather for "professional fees and road work in developing those properties." It follows that the initial conveyance by the county would remain an impermissible donation of public property. Moreover, I strongly question whether a county can permissibly contract to perform services for a private entity, even if that entity exists to advance the arguably public goal of promoting economic development. Compare Ark. Op. Att'y Gen. No. 2000-260 (opining that to the extent "the development of economic development plans" is an appropriate governmental function, a county might under an appropriate set of facts contract to have a private, nonprofit corporation pursue that end).
Assistant Attorney General Jack Druff prepared the foregoing, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:JD/cyh
Enclosure