The Honorable Nathan V. George State Representative 11236 North New Hope Road Dardanelle, AR 72834-7776
Dear Representative George:
I am writing in response to your request for my opinion on a question arising from the following reported facts:
 A firing range is being developed south of Atkins in Pope County. This project is a private endeavor, but the individuals want the county to lease the range. I am under the assumption that public funds may not be expended for private use, and that funds must only be expended for public use. The residents of the area are opposed to the firing range, and a petition is being passed around to stop the development.
Against this backdrop, you have asked: "What can the county do to prevent this development?"
RESPONSE
I gather from your factual recitation that your question is prompted by the concerns of various individuals whose property adjoins the proposed firing range. In this regard, I must point out that while I am required to advise members of the General Assembly and various state officials on questions of state law, see A.C.A. § 25-16-706 (Repl. 2002), I am prohibited from engaging in the private practice of law. A.C.A. §25-16-701 (Repl. 2002). Accordingly, to the extent that your constituents oppose construction of the proposed firing range, I can do no more than suggest that they consult with private counsel.
I can and will, however, direct you to the provisions of law that I believe will bear on your question. One pertinent law is set forth in the identical provisions of A.C.A. §§ 14-16-504 and 14-54-1411 (Supp. 2003), codified pursuant to Act 110 of 1993, which provide in pertinent part:
 (a) As used in this section, "local unit of government" means a city, town, or county.
 (b)(1)(A) A local unit of government shall not enact any ordinance or regulation pertaining to, or regulate in any other manner, the ownership, transfer, transportation, carrying, or possession of firearms, ammunition for firearms, or components of firearms, except as otherwise provided in state or federal law.
 (B) This shall not prevent the enactment of an ordinance regulating or forbidding the unsafe discharge of a firearm.
I am unaware if the Pope County Quorum Court has enacted any ordinances that might apply in this regard pursuant to subsection (b)(1)(B) of this statute.
Your question might further implicate the provisions of subchapter 5 of title 16, chapter 105 of the Code (Supp. 2003), which provides:
As used in this subchapter:
 (1) "Local unit of government" means a county, city of the first class, city of the second class or incorporated town;
 (2) "Person" means an individual, proprietorship, partnership, corporation, association, or other legal entity; and
 (3) "Sport shooting range" or "range" means an area designed and operated for the use of rifles, shotguns, pistols, silhouettes, skeet, trap, black powder, or any other similar sport shooting.
A.C.A. § 16-105-501.
 (a) Notwithstanding any other provision of law to the contrary, a person who operates or uses a sport shooting range in this state shall not be subject to civil liability or criminal prosecution for noise or noise pollution resulting from the operation or use of the range if the range is in compliance with noise control ordinances of local units of government that applied to the range and its operation at the time the range was constructed and began operation.
 (b) A person who operates or uses a sport shooting range is not subject to an action for nuisance, and no court of the state may enjoin the use or operation of a range on the basis of noise or noise pollution, if the range is in compliance with noise control ordinances of units of local government that applied to the range and its operation at the time the range was constructed and began operation.
 (c) A person who subsequently acquires title to or who owns real property adversely affected by the use of property with a permanently located sport shooting range shall not maintain a nuisance action against the person who owns the range to restrain, enjoin, or impede the use of the range unless there has been a substantial change in the nature of the use of the range or by a person using the range.
 (d) Rules or regulations adopted by any state agency for establishing levels of noise allowable in the outdoor atmosphere shall not apply to a sport shooting range exempted from liability under this subchapter.
 (e) Notwithstanding any other provision of law to the contrary, nothing in this subchapter shall be construed to limit civil liability except in the limited case of noise pollution.
A.C.A. § 16-105-502.
 This subchapter does not affect rights or duties that matured, liabilities or penalties that were incurred, or proceedings begun before August 1, 1997.
A.C.A. § 16-105-503.
This subchapter precludes successfully opposing the construction of a rifle range based upon noise so long as the rifle range "is in compliance with noise control ordinances of local units of government that applied to the range and its operation at the time the range was constructed and began operation."
With respect to your concern that it might be impermissible for the county to lease the proposed firing range from a private entity, I will note initially that it is unclear what you mean in suggesting that "the individuals want the county to lease the range." This characterization leaves unaddressed the question of whether the county would in fact take over the operation of the firing range, presumably allowing the general public equal access to the facility, or whether the private entity that owns the facility would continue to conduct operations there. Without knowing more about precisely what lease arrangement the proponents of this operation propose, it is difficult for me to respond to your question.
I can, however, opine generally that nothing would preclude the county from entering into a lease arrangement with the developers of the proposed project so long as the consequent operation of the firing range were otherwise legal and the lease served a public purpose. With respect to the public-purpose prong of this test, I will note that a county government is expressly authorized to provide "[p]ark and recreation services." A.C.A. § 14-14-802(b)(2)(B)(vi) (Repl. 1998). In Ark. Op. Att'y Gen. No. 2005-046, I offered the following analysis in addressing whether a city might contract with a private Girls' Club or a Boys' Club to provide recreational services:
 [T]he foregoing analysis [concluding that simply donating public funds to a Girls' Club or a Boys' Club would offend Ark. Const. art. 12, § 5] is not meant to suggest that a city is foreclosed from contracting with a Boys' Club or Girls' Club for the provision of services that advance a public purpose. In Opinion No. 2001-135, my predecessor offered the following analysis of this issue:
I summarized at the conclusion of Ark. Op. Att'y Gen. No. 1999-408:
 [N]othing in the constitution precludes the county from contracting with a private nonprofit charity, so long as the contract is supported by adequate consideration and serves a proper governmental end. Cities and counties clearly can enter into contracts that are supported by valid consideration. See Ops. Att'y Gen. No. 98-025 and 97-250; A.C.A. § 14-54-101(2); City of Ft. Smith v. Bates, 260 Ark. 777, 544 S.W.2d 525 (1976); City of Harrison v. Boone County, 238 Ark. 113, 378 S.W.2d 665 (1964). Moreover, this authority includes the power to contract with nonprofit organizations. See Woodruff v. Shockey, 297 Ark. 595, 764 S.W.2d 431
(1989). Such contracts have been upheld as not being in violation of Article 12, § 5. See Arkansas Uniform Linen Supply v. Institutional Services Corp., 287 Ark. 370, 700 S.W.2d 358 (1985). To the extent, then, that the provision of recreational services for young people is an appropriate governmental function, the county might contract for its performance by, say, a Girls' Club or Boys' Club. Again, the decision to undertake such a contract would necessarily be based on factual considerations I am unprepared and unauthorized to review. I advise you to consult with local counsel regarding such matters.
You have not indicated whether the private entity that is promoting construction of the firing range is a nonprofit corporation, and I do not believe the answer to this question would bear on my analysis. Again, so long as the contract serves the public purpose of providing "recreation services," a county may contract with any private entity. As suggested above, the question of whether the proposed lease agreement would pass muster under this standard is one of fact that I am neither equipped nor authorized to address.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB/JHD:cyh