The Honorable Bobby L. Glover State Senator Post Office Box 1 Carlisle, AR 72024
Dear Senator Glover:
I am writing in response to your request for my opinion on the following questions:
 1. Can the City of Cabot donate $500 per month to the Lonoke County Safe Haven, a shelter for domestic abuse victims?
 2. If the answer to question one is "no," can the City of Cabot contract with Lonoke County Safe Haven for services?
 3. If the answer to question two is "yes," should the city's payments to Safe Haven be limited to payments for services provided to victims who are also residents of the City of Cabot?
 4. Can the Cabot Water Wastewater Commission, pursuant to ACA 14-234-307(b)(1), donate funds to support Lonoke County Safe Haven?
You recite the following factual background as having prompted your questions:
 On August 15, 2005 the Cabot City Council unanimously adopted Resolution No. 56 of 2005. This Resolution provides for a monthly contribution of $500.00 to Lonoke County Safe Haven, a shelter for domestic abuse victims. The facility operates in Lonoke County and will accept victims from throughout the county for shelter and assistance.
 City officials have been informed that Safe Haven receives funding from counties and municipalities elsewhere in the state.
RESPONSE
In my opinion, the answer to your first question is "no." Article 12, § 5
of the Arkansas Constitution, as interpreted by the Arkansas Supreme Court, would preclude a city from donating public funds to a private, nonprofit corporation. I believe the answer to your second question is "yes," subject to the condition that the consideration the city pays for the services at issue must be reasonable. I believe the answer to your third question is also "yes," given that a city's statutory police powers enable it to provide only for the general welfare of its "inhabitants." A.C.A. § 14-55-102. In my opinion, the answer to your fourth question is "no." Although A.C.A. §§ 14-42-108(b)(2) and 14-234-307(b)(1) expressly authorize municipal water commissions to donate money to various types of organizations, I believe these statutes would be adjudged unconstitutional as offending Article 12, § 5 if they were read as authorizing the donation of public funds to a private, nonprofit corporation.
Question 1: Can the City of Cabot donate $500 per month to the LonokeCounty Safe Haven, a shelter for domestic abuse victims?
In my opinion, the answer to this question is "no."
My inquiries reveal that Lonoke County Safe Haven is organized as a private, nonprofit corporation. Article 12, § 5 of the Arkansas Constitution provides in pertinent part: "No county, city, town or other municipal corporation shall . . . appropriate money for, or loan its credit to, any corporation, association, institution or individual." Because of its broad proscription against grants or loans "to any corporation, association, institution, or individual," Article 12, § 5 would appear to bar any and all donations to any entity or person, including a private, nonprofit corporation, regardless of how exalted its purpose. However, as reflected in the ensuing discussion,[1] the case law has somewhat complicated the issue of what types of entities may receive donations of public funds.
In Bourland v. Pollock, 157 Ark. 538, 543, 545, 249 S.W. 60 (1923), the Court ruled that a confederation of private organizations and public officials, the Fort Smith Federated Welfare Association, whose purpose it was to aid "sick and afflicted children, wayward girls and worthy or indigent families," was not a "corporation, association, institution, or individual" as referenced in Article 12, § 5 and hence was not constitutionally prohibited from receiving public funds. In support of this conclusion, the Court remarked that the Welfare Association fulfilled a "public purpose" that the City of Fort Smith would otherwise have had to fulfill through the "governmental work" of its own agencies.Id. at 546. The dissent protested that even a voluntary association engaged in charitable work nevertheless remained an "association" subject to the Article 12, § 5 proscription, particularly in light of the fact that it was not "under the legal control of the city."[2] Id. at 550.
In Bank of Commerce v. Huddleston, 172 Ark. 999, 1003-04, 291 S.W. 422
(1927), Chief Justice Hart (who wrote the dissent in Bourland) offered the following analysis in the course of reversing a successful Article 12, § 5 challenge to the city of McGehee's issuance of warrants to support a citywide improvement district:
 Under this section of our Constitution, public money or the public revenue cannot be used or pledged in aid of private enterprises. In no case originated by individuals, whether associated or not, or by private corporations with a view to gain, can municipal corporations participate in such manner as to incur pecuniary expense or liability. Municipal corporations may not become stockholders or furnish money or credit for the benefit of private enterprises. The object of the provision in the Constitution was to prevent municipal corporations from engaging in enterprises foreign to the purpose for which they were organized and assuming liabilities not within the compass of the usual and necessary powers of cities and towns. The question of the power of municipal corporations to subscribe for or to loan its credit in the form of bonds in aid of railroad companies had been the subject of much litigation in other States, and the framers of the Constitution enacted the section in question for the purpose of settling the question. Russell v. Tate, 52 Ark. 541, 13 S.W. 130; Newport v. Railway Co., 58 Ark. 270, 24 S.W. 427; and Luxora v. J.L.C. E. Rd. Co., 83 Ark. 275, 103 S.W. 605.
What is striking about this passage is that it appears to condition the proscription against assistance even to "private enterprises" by adding the qualifier "with a view to gain." In any event, immediately after offering its analysis, the court concluded that a citywide improvement district does not fall within the constitutional proscription.[3]172 Ark. at 1004.
In City of Little Rock v. Community Chest, 204 Ark. 562, 566-67,163 S.W.2d 522 (1942), which involved the predecessor legislation to the statute referenced in your fourth question, the court avoided the constitutional argument raised in Bourland, reversing a decision upholding the city waterworks' pledge to the Community Chest because (a) the language of the applicable bond issue did not support making such a pledge; and (b) the statute authorizing such a pledge, which would have become part of the contract, was not yet in effect at the time the pledge was made. The court consequently did not reach the possible application of Article 12, § 5.
By contrast, in Neel v. City of Little Rock, 204 Ark. 568, 569,163 S.W.2d 525 (1942) — a companion case to City of Little Rock v. CommunityChest — the court upheld a $5,000 municipal donation to the Community Chest of Greater Little Rock. In explaining its ruling, the court noted that the statute banning the donation of municipal assets (currently A.C.A. § 14-42-108) was in effect at the time the court upheld the donation in Bourland, thus supporting the conclusion that the $5,000 donation at issue in Neel was likewise permissible.[4] Id. The court noted in passing that "the city has in its treasury sufficient general funds to pay said donation." Id. at 568. The court in Neel at no point discussed the application of Article 12, § 5.
In 1943, the Court further announced that Article 12, § 5 did not bar the contribution of municipal funds to a street improvement district. City ofParis v. Street Improvement District No. 12, 206 Ark. 926, 175 S.W.2d 199
(1943).
The upshot of the early cases just discussed seems to have been that a variety of entities, including an apparently nongovernmental entity of the sort at issue in Bourland, might fall outside the scope of Article 12, § 5. As of 1943, the court had taken the position that municipal contributions to various types of entities would pass constitutional muster provided that the contribution served a "public purpose" or effected a "governmental function" and particularly if either the recipient's existence or the donation itself were authorized by statute.See also Hogue v. Housing Authority of North Little Rock, 201 Ark. 263,144 S.W.2d 49 (1940) (approving statutorily authorized donation to housing authority because it served a public purpose).
However, in Halbert v. Helena-West Helena Industrial Development Corp.,226 Ark. 620, 625, 291 S.W.2d 802 (1956), the court adopted what seems a much stricter interpretation of art. 12, § 5, offering the following analysis of the statutorily authorized purchase by a local government of a "membership" in a local industrial development corporation:
 Under Section 20 of the Act 404, a city, town or county is allowed to "purchase membership" in a local industrial development corporation. It would be doing indirectly what the Constitution forbids to be done directly, if a county or municipality were allowed to purchase a membership in the corporation, because such purchase of "membership" would certainly be granting financial aid to the said local corporation. When the Arkansas Legislature allowed the creation of local development corporations as private non-profit corporations, it could not at the same time allow counties or municipalities to grant financial aid to such corporations.
(Emphasis added.) This passage strongly suggests that a municipality cannot contribute to a private, nonprofit corporation regardless of whether the corporation serves a "public purpose." See Ark. Op. Att'y Gen. No. 90-279 (reading the passage just quoted as supporting this conclusion). In accordance with this conclusion, the court struck the constitutionally offensive portion of the Arkansas Industrial Development Act, although it allowed the remainder of the Act to stand.226 Ark. at 625-26.
In reaching its conclusion, the court distinguished Neel v. City ofLittle Rock in a manner that verges on overruling the case outright:
 The appellees cite the case of Neel v. City of Little Rock, 204 Ark. 568, 163 S.W.2d 525, 142 A.L.R. 1071, as a case in which we allowed a city to donate money to the Community Chest and say that, by the same token, we should allow cities to buy memberships in local development corporations organized under Act 404. But in Neel v. City of Little Rock, some surplus money of a city was allowed to be given to public charity, which saved the city from making certain expenditures; that is far different from the situation here. At all events, Neel v. City of Little Rock is a borderline case; and we refuse to extend the effect of its holding.
226 Ark. at 625-26. Although this passage contains an almost vestigial suggestion that a donation to a private, nonprofit corporation might be warranted if the activity sponsored is one that the government itself would otherwise have to undertake, this suggestion is significantly and immediately qualified by the court's refusal "to extend the effect" ofNeel.
The apparent sea change in the court's approach to Article 12, § 5 culminated in City of Jacksonville v. Venhaus, 302 Ark. 204,788 S.W.2d 478 (1990), which involved the question of how to distribute the residuals remaining from an illegal exaction after the chancellor had distributed proceeds from the common fund to identified taxpayers. The chancellor distributed $700,000 to various charities, including $355,000 to nonprofit corporations, and directed that the remaining $3.3 million be devoted to building a juvenile justice center. The supreme court reversed both awards, noting that "[s]uch use of public funds is arbitrary and capricious, necessarily leads to unpredictable results, and is impermissible." Id. at 211. Invoking Halbert, the court recited the constitutional ban on giving county or municipal funds "to any corporation, association, institution, or individual" and directed that "the residual funds be returned pro rata to the governmental entities tobe used for general municipal services." Id. (emphasis added). What is perhaps most striking in this decision is that the court did not even undertake an analysis of whether any portion of the award was devoted to a "public purpose" or might be characterized as fulfilling a "governmental function." Rather, it simply directed that the funds be returned to the appellant municipalities "to be used for general municipal services" — a pronouncement that verges on a mandate that only the city, county or an agency thereof can properly expend such funds.
Finally, in McCutchen v. Huckabee, 328 Ark. 202, 943 S.W.2d 225 (1997), the supreme court entertained an article 12, § 5 challenge to legislation that had appropriated $20 million for a multipurpose civic center in Pulaski County. The quorum court enacted an ordinance creating a Multi-Purpose Civic Center Facility Board to oversee construction and eventually take ownership of the facility. The appellants objected to the use of public funds for this purpose. Invoking City of Paris, which had rejected a similar challenge to public funding of an improvement district, the Court concluded that "facilities boards are not the type of company, association, or corporation contemplated by Article 12, Section 5." 382 Ark. at 213. Consequently, notwithstanding the judicial tightening of the rule restricting the use of public funds, there apparently remains a category of quasi-public entity that can properly be awarded such funds.
In Opinion No. 1999-408, my predecessor summarized what he considered the present state of the law as follows:
 [A]ny use of county moneys for charitable purposes may well pass constitutional muster if the use serves a public purpose or achieves a governmental function, so long as the recipient can be characterized as "public". . . . As the law currently stands, there appears to be some element of fiat in the Supreme Court's pronouncements regarding what pledges of municipal or county funds will be permitted. As established in McCutchen, it is clearly permissible, for instance, to contribute to a facilities board, which, despite not being a straightforward municipal agency, has a statutory pedigree and has been identified as a category of entity beyond the contemplation of article 12, § 5. In the wake of Venhaus, however, it is clearly impermissible to contribute to a private nonprofit corporation like the AIDC. Perhaps the most that can be said is that if an entity is authorized by statute and is not organized as a private nonprofit corporation, and especially if the donations themselves are authorized by statute, a donation of county or municipal funds may be constitutional. These principles reflect a clear move by the Court to reassert that public moneys may only be put to public use.
Id. at 9 (emphasis added).
Accordingly, even though I recognize that Lonoke County Safe Haven serves a noble purpose, I must opine that it cannot constitutionally be the recipient of donations by the City of Cabot. I do not believe I should change this opinion based upon your report that "Safe Haven receives funding from counties and municipalities elsewhere in the state." Again,Halbert and Venhaus appear to establish definitively that local political subdivisions may not donate funds to private, nonprofit corporations. If certain political subdivisions are, in fact, making such contributions, I believe they are doing so in derogation of Ark. Const. art 12, § 5 and the contributions might be challenged as illegal exactions prohibited by Ark. Const. art. 16, § 13.
Question 2: If the answer to question one is "no," can the City of Cabotcontract with Lonoke County Safe Haven for services?
In my opinion, the answer to this question is "yes," so long as a need for such services exists in the city and so long as the consideration paid for those services is reasonable.
In the above referenced Opinion No. 1999-408, after having observed that a county could not donate funds to a private, nonprofit corporation, my predecessor offered the following proviso, with which I fully agree:
 [N]othing in the constitution precludes the county from contracting with a private nonprofit charity, so long as the contract is supported by adequate consideration and serves a proper governmental end. Cities and counties clearly can enter into contracts that are supported by valid consideration. See Ops. Att'y Gen. No. 98-025 and 97-250; A.C.A. § 14-54-101(2); City of Ft. Smith v. Bates, 260 Ark. 777, 544 S.W.2d 525 (1976); City of Harrison v. Boone County, 238 Ark. 113, 378 S.W.2d 665 (1964). Moreover, this authority includes the power to contract with nonprofit organizations. See Woodruff v. Shockey, 297 Ark. 595, 764 S.W.2d 431
(1989). Such contracts have been upheld as not being in violation of Article 12, § 5. See Arkansas Uniform Linen Supply v. Institutional Services Corp., 287 Ark. 370, 700 S.W.2d 358 (1985). To the extent, then, that the provision of recreational services for young people is an appropriate governmental function, the county might contract for its performance by, say, a Girls' Club or Boys' Club. Again, the decision to undertake such a contract would necessarily be based on factual considerations I am unprepared and unauthorized to review. I advise you to consult with local counsel regarding such matters.
In my opinion, assuming a need exists, sheltering and counseling victims of domestic abuse clearly constitutes a proper governmental end that falls squarely within the range of a city's police powers. Pursuant to A.C.A. § 14-55-102 (Repl. 1998), municipal corporations may "make and publish by-laws and ordinances, not inconsistent with the laws of this state, which, as to them, shall seem necessary to provide for the safety, preserve the health, promote the prosperity, and improve the morals, order, comfort, and convenience of such corporations and the inhabitants thereof." Cities have broad discretion, under this so-called "general welfare clause," to determine what is necessary for the public welfare, safety and convenience of the city's inhabitants. Sander v.Blytheville, 164 Ark. 434, 262 S.W. 23 (1924); City of Fort Smith v. VanZandt, 197 Ark. 91, 122 S.W.2d 187 (1938). However, a necessity must reasonably exist in order for the city to exercise its police power. Cityof Little Rock v. Smith, 204 Ark. 692, 696, 163 S.W.2d 705 (1942); Beatyv. Humphrey, 195 Ark. 1008, 115 S.W.2d 559 (1938). Accordingly, if, as seems likely, providing a domestic abuse shelter would serve the interests of Cabot's citizens, the city may contract with a private corporation to fulfill this need, subject to the condition that the consideration it pays under the contract must be reasonable.
Question 3: If the answer to question two is "yes," should the city'spayments to Safe Haven be limited to payments for services provided tovictims who are also residents of the City of Cabot?
In my opinion, the answer to this question is "yes." As I noted in my response to your previous question, A.C.A. § 14-55-102 authorizes any municipal corporation to provide for the general welfare of its "inhabitants." I believe the quoted term clearly refers only to residents of the municipal corporation. Accordingly, I believe any payments by the city that effectively subsidize services provided to county residents would violate the statute and invite an illegal-exaction challenge under Ark. Const. art. 16, § 13.
Question 4: Can the Cabot Water Wastewater Commission, pursuant to ACA14-234-307(b)(1), donate funds to support Lonoke County Safe Haven?
Subsection 14-234-307(b)(1) of the Arkansas Code (Repl. 1998), which is contained in a subchapter of the Code authorizing the formation in cities of the first and second class of commissions to operate municipally owned waterworks, provides:
 The commissioners shall be authorized to make donations of money from the revenue of municipal waterworks systems to local community chests or other citywide nonsectarian, incorporated, charitable organizations.
The authority granted commissions in cities of the first and second class in this statute closely tracks that granted commissions in cities of the first class in A.C.A. § 14-42-108(b)(2), which provides:
 The waterworks commission of cities of the first class shall be authorized to make donations of money from the revenue of municipal waterworks systems to the local United Way campaign or other citywide nonsectarian, incorporated charitable organizations.
In my opinion, for reasons set forth in my response to your first question, to the extent these statutes might support donating public funds to a private, nonprofit corporation, I believe a court faced with the issue would declare them unconstitutional as violating Ark. Const. art. 12, § 5. I offer this opinion well aware of the fact that A.C.A. §§14-42-108(b)(2) and 14-234-307(b)(1) might be read as authorizing such donations. However, as noted above, these statutory subsections were enacted in 1941 — well before the supreme court began what I consider a course narrowing its reading of Article 12, § 5 to preclude what might earlier have been considered permissible donations of public funds to private entities. If faced with the issue, I believe a reviewing court acquainted with the supreme court's current position on the donation of public funds to private, nonprofit corporations, would decline to rely on the referenced statutes as authorizing the proposed donations.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB/JHD:cyh
[1] The ensuing discussion in large measure tracks the analysis offered by one of my predecessors in Ark. Op. Att'y Gen. No. 1999-408. In order to avoid potentially confusing cross referencing, I will incorporate much of my predecessor's analysis into this opinion.
[2] The dissenters comprised two of the court's then five members.
[3] Invoking Huddleston, in Bush v. Martineau, 174 Ark. 214, 223,259 S.W. 9 (1927), the supreme court further held that supporting road districts is not repugnant to Ark. Const. art. 12, § 12, which prohibits the state from ever paying "the debt or liability of any county, town, city, or other corporation whatever, or any part thereof. . . ." In that same year, in Ruff v. Womack, 174 Ark. 971, 298 S.W. 222 (1927), the court ruled that the state's loaning money to needy school districts reflects a "proper purpose" and hence is not prohibited by Ark. Const. art. 16, § 1, which provides that "[n]either the State nor any city, county, town or other municipality in this State shall ever lend its credit for any purpose whatever."
[4] This analysis is troubling insofar as the court in Bourland at no point invoked the referenced statute as supporting its ruling. Indeed, the only statute upon which the court relied was CM Digest, § 7494, currently codified as A.C.A. § 14-55-102, which affords cities the power to provide for the general welfare of their inhabitants. Bourland,157 Ark. at 544. The gist of the court's ruling, which turned upon the application of Article 12, § 5, appears to have been that certain types of "quasi municipal governmental agencies" may "carry out the purposes of municipal government," id. at 546-47 — a conclusion that in itself would not appear to bear on the Neel court's declaration that a particular statute did not bar the challenged donation.